UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

DONALD JENNER,

                    Petitioner,

          vs.

WILLIAM BROWN,[1] Superintendent,
Eastern New York Correctional Facility,

                    Respondent.

No. 9:07-cv-01301-JKS

MEMORANDUM DECISION

Petitioner, Donald Jenner, a state prisoner proceeding *pro se*, has petitioned for habeas

corpus relief under 28 U.S.C. § 2254.  Jenner is presently in the custody of the New York

Department of Correctional Services, incarcerated at the Eastern New York Correctional Facility.

Respondent has answered the petition.  Jenner has not replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

Following a jury trial, Jenner was convicted in the Madison County Court of one count of

Making a Terroristic Threat (N.Y. Penal Law § 490.20[1]).  The trial court sentenced Jenner as a

persistent felony offender to an indeterminate prison term of 15 years to life.  Jenner timely

appealed his conviction and sentence to the Appellate Division, Third Department, which

affirmed his conviction and sentence in a reasoned decision, and the New York Court of Appeals

denied leave to appeal on June 21, 2007.[2]  On August 7, 2007, Jenner filed a motion to vacate the

---

[1] William Brown, Superintendent, Eastern New York Correctional Facility, is substituted
for William Lape, Superintendent, Coxsackie Correctional Facility.  Fed. R. Civ. P. 25(d).

[2] *People v. Jenner*, 835 N.Y.S.2d 501 (N.Y.A.D.), *lv. denied*, 872 N.E.2d 885 (N.Y.
(continued...)

judgment and set aside the sentence under N.Y. Criminal Procedure Law §§ 440.10 and 440.30

in the Madison County Court.  The Madison County Court denied the motion in a reasoned

decision,[3] and the Appellate Division denied leave to appeal on December 31, 2007.[4]  Jenner

timely filed his petition for relief in this Court on November 4, 2007.

The facts of the crime as recited by the Appellate Division are:

> [Jenner] and his girlfriend resided in the City of Syracuse, Onondaga
> County.  Prior to their cohabitation, the girlfriend's son was removed from her
> care and placed in the custody of the Department of Social Services (hereinafter
> DSS) of Madison County.  Madison DSS employee Robin Streeter was the
> primary caseworker assigned to the girlfriend's case.  Tim Brown was Streeter's
> supervisor.  When the girlfriend moved to Onondaga County, Michelle Moon, an
> employee with DSS of Onondaga County, was assigned as a secondary
> caseworker.  The ultimate goal of DSS was reunification of the girlfriend with her
> son.  After learning that [Jenner] had a criminal record, including a conviction for
> a sexual offense, Moon repeatedly advised [Jenner] and his girlfriend of DSS's
> policy that a child not be permitted to have any contact, other than supervised
> visitation, with an untreated sex offender.  [Jenner] never provided DSS with
> proof that he had completed a sex offender treatment program.  As a result, Moon
> told [Jenner] and his girlfriend that reunification with her son would not be
> possible as long as she continued to reside with [Jenner], unless he provided proof
> of completion of an approved treatment program.
> At a May 3, 2004 unannounced home visit, Moon again informed the
> girlfriend of the DSS policy noted above.  [Jenner], who was entering the
> apartment and overheard Moon, became irate.  He began yelling and cursing at
> Moon, stating "I'm sick of Madison and Onondaga County telling me what to do."
> Pointing at Moon, he continued, "I'll solve this problem.  I'll walk right into
> Madison County DSS.  I'll get a gun.  And I'll take care of that f* * *ing b* * * *
> Robin Streeter and Tim Brown once and for all, and I'm not kidding.  I've got
> nothing . . . you think Columbine was something, I've got nothing to lose."  In
> previous conversations, [Jenner] had told Moon that he had been diagnosed with
> end stage liver disease and hepatitis C and had only months to live.  [Jenner]
> mentioned numbers and letters commonly associated with gun models, such as

---

[2](...continued)
2007) (Table).

[3] Docket No. 23-12.

[4] Docket No. 23-15.

AK 47, stated that he was a member of a militant Native American society and said, "I can get my hands on any kind of gun that I need at any time." He also directed epithets at Streeter. Upon leaving the apartment, Moon notified Streeter of [Jenner]'s threats. Streeter notified Brown and the police.

[Jenner] attempted to call the Onondaga County District Attorney while Moon was present, but he had to leave a message. On May 4, 2004, an investigator from the District Attorney's office returned the call. [Jenner] stated that he was upset with caseworkers from Madison and Onondaga DSS, specifically identifying Streeter and Moon. He indicated that he would carry through with his intentions from the previous day, although he would not repeat those intentions over the phone.[5]

## II.  GROUNDS RAISED/DEFENSES

In his petition, Jenner has raised seven grounds:  (1) double jeopardy/improper venue; (2) his due process rights were violated by being physically restrained (shackled) during trial; (3) his sentence as a persistent felony offender violated *Apprendi*;[6] (4) the trial court lacked jurisdiction; (5) ineffective assistance of trial counsel; (6) the prosecutor was biased; and (7) sentence was harsh and excessive.  Respondent contends the first, fourth, fifth, and sixth grounds are procedurally barred, and the sixth ground unexhausted.  Respondent asserts no other affirmative defense.[7]

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, this Court cannot grant relief unless the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was

---

[5] *Jenner*, 835 N.Y.S.2d at 503-04.

[6] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

[7] *See* Rules—Section 2254 Cases, Rule 5(b).

based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding."[8]  The Supreme Court has explained that "clearly established Federal law" in §

2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time

of the relevant state-court decision."[9]  The holding must also be binding upon the states; that is,

the decision must be based upon constitutional grounds, not on the supervisory power of the

Supreme Court over federal courts.[10]  Thus, where holdings of the Supreme Court regarding the

issue presented on habeas review are lacking, "it cannot be said that the state court

'unreasonabl[y] appli[ed] clearly established Federal law.'"[11]  When a claim falls under the

"unreasonable application" prong, a state court's application of Supreme Court precedent must

be objectively unreasonable, not just incorrect or erroneous.[12]  The Supreme Court has made

clear that the objectively unreasonable standard is a substantially higher threshold than simply

believing the state court determination was incorrect.[13]  "[A]bsent a specific constitutional

violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

the trial with unfairness as to make the resulting conviction a denial of due process.'"[14]  In a

---

[8] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[9] *Williams*, 529 U.S. at 412.

[10] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[11] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam).

[12] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[13] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[14] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

federal habeas proceeding, the standard under which this Court must assess the prejudicial

impact of constitutional error in a state-court criminal trial is whether the error had a substantial

and injurious effect or influence in determining the outcome.[15]  Petitioner "bears the burden of

proving by a preponderance of the evidence that his constitutional rights have been violated."[16]

In applying this standard, this Court reviews the last reasoned decision by the state

court.[17]  In addition, the state court's findings of fact are presumed to be correct unless the

petitioner rebuts this presumption by clear and convincing evidence.[18]  Although pre-AEDPA

precedent established that deference was due findings of state appellate courts,[19] the Second

Circuit has left the question open with respect to post-AEDPA cases.[20]  In the absence of a clear

indication from the Second Circuit to the contrary, this Court can find no principled reason not to

apply the same rule in the context of AEDPA, *i.e.*, findings of a state appellate court are

presumed to be correct.

---

[15] *See Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[16] *Hawkins v. Costello*, 460 F.3d 238, 246 (2d Cir. 2006) (internal quotation marks and citation omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[17] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000).

[18] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[19] *See Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Ventura v. Meachum*, 957 F.2d 1048, 1055 (2d Cir. 1992).

[20] *See Boyette v. Lefevre*, 246 F.3d 76, 88 n.7 (2d Cir. 2001).

IV.  DISCUSSION

The discussion is divided into four parts.  First, the Court will address the general effect

of Jenner's failure to traverse the answer.  Second, the Court will address those grounds to which

the Respondent has raised the affirmative defense of procedural default—the first, fourth, fifth

and sixth grounds.  Third, the Court will address the exhaustion defense raised to the sixth

ground.  Finally, the Court will discuss on the merits those claims that are not procedurally

barred or barred as unexhausted, as well as those claims to which the Respondent has not

asserted an affirmative defense.

**A.  Failure to Traverse**.

Jenner has not traversed the Respondent's answer.  28 U.S.C. § 2248 provides:

> The allegations of a return to the writ of habeas corpus or of an answer to an order
> to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as
> true except to the extent that the judge finds from the evidence that they are not
> true.

Ordinarily, under § 2248, where there is no denial of the Respondent's allegations in the

answer, or the denial is merely formal, unsupported by an evidentiary basis, the Court must

accept Respondent's allegations.[21]  Where there is no traverse filed and no evidence offered to

contradict the allegations of the return, they must be accepted as true.[22]

**B.  Procedural Bar**.

Under the adequate-and-independent-state-ground doctrine, federal courts may not review

a judgment of a state court that "rests on a state-law ground that is both 'independent' of the

_____

[21] *See Carlson v. Landon*, 342 U.S. 524, 530 (1952).

[22] *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66 (2d Cir. 1952) (per
curiam).

merits of the federal claim and an 'adequate' basis for the court's decision."[23]   Because this

doctrine applies on federal habeas review and because the state-law ground may be a procedural

bar,[24] federal habeas courts often speak of an "adequate and independent procedural bar" to

federal review of a claim or simply of a "procedurally barred" federal claim.   A federal habeas

court lacks jurisdiction to evaluate questions of federal law decided by a state court where the

state court judgment "rests on a state law ground that is independent of the federal question and

adequate to support the judgment."[25]   Where a decision "fairly appear[s] to rest primarily on

federal law, or to be interwoven with the federal law, and when the adequacy and independence

of any possible state law ground is not clear from the face of the opinion," habeas courts presume

that there is no adequate and independent state law ground supporting the judgment.[26]   This rule

even applies where the state court has ruled on the merits in the alternative.[27]   Finally, "[s]tate

courts may not avoid deciding federal issues by invoking procedural rules that they do not apply

evenhandedly to all similar claims."[28]   Accordingly, a procedural bar will be deemed "adequate"

only if it is based on a rule that is "firmly established and regularly followed" by the state in

question.[29]

---

[23] *Harris v. Reed,* 489 U.S. 255, 260 (1989).

[24] *Id.* at 261-62.

[25] *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

[26] *Id.* at 735.

[27] *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005).

[28] *Hathorn v. Lovorn,* 457 U.S. 255, 263 (1982).

[29] *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991).

To classify the decision as either fairly appearing to rest primarily on or interwoven with

federal law, or as resting primarily on state procedural law, this Court looks to three factors:  (1)

the face of the state court opinion; (2) whether the state court was aware of a procedural bar; and

(3) the practice of state courts in similar circumstances.[30]  To avoid a procedural bar, a petitioner

must demonstrate either cause for the default and actual prejudice, or that the failure to consider

the claims will result in a fundamental miscarriage of justice.[31]  To prove a fundamental

miscarriage of justice, a petitioner must show that a constitutional violation probably resulted in

his conviction despite his actual innocence.[32]  Although at the gateway stage Jenner need not

establish his innocence as an "absolute certainty," Jenner must demonstrate that more likely than

not, no reasonable juror could find him guilty beyond a reasonable doubt.[33]

This Court will review the grounds to which the Respondent has asserted the procedural

bar as an affirmative defense—the first, fourth, fifth and sixth grounds.

Ground 1:  Double Jeopardy/Improper Venue.

Jenner asserts that he was tried and convicted of harassment and aggravated harassment

in the Onondaga County Court based upon the same act, same victim, and same incident as his

---

[30] *Jimenez v. Walker*, 458 F.3d 130, 145 and n.16 (2d Cir. 2006).

[31] *Coleman*, 501 U.S. at 749-50 (citing *Murray v. Carrier*, 477 U.S. 478, 485 (1986)).

[32] *See Schlup v. Delo,* 513 U.S. 298, 321-25 (1995) (linking miscarriages of justice to actual innocence); *United States v. Olano,* 507 U.S. 725, 736 (1993) ("In our collateral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent."); *Murray v. Carrier,* 477 U.S. 478, 496 (1986) ("in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.")

[33] *House v. Bell*, 547 U.S. 518, 538 (2006).

conviction in this case.  Thus, Jenner contends that he is being tried twice for the same crime.

Jenner raised these arguments in his §§ 440.10/440.30 motion.

      Ground 4:  Lack of Jurisdiction.

      In this ground Jenner argues that because none of the acts complained of occurred in

Madison County, the Madison County Court lacked geographical jurisdiction over him.

      Jenner raised both of these arguments in his motion to vacate the conviction and sentence

under §§ 440.10/440.30.  In denying Jenner's motion, the Madison County Court held:

> [Jenner's] fourth and fifth bases, as enumerated above, were originally
> argued as part of his omnibus pre-trial motions and this court rendered a written
> decision thereon on September 28, 2004 holding that Madison County was a
> proper venue for [Jenner's] prosecution and that his prosecution was not barred by
> double jeopardy.  These issues were not raised before the Appellate Division and
> defendant has offered no reason why this was not done.  Hence, denial of this part
> of his motion is required under CPL § 440.10(2)(c).[34]

      There is no question that the Madison County Court explicitly invoked the state

procedural rule as barring review.  New York Criminal Procedure Law § 440.10[2](c)[35] is an

adequate and independent state ground consistently applied.[36]  By failing to traverse the response,

Jenner has neither properly joined the procedural bar issue nor established any basis to avoid its

consequences.  Thus, Jenner is procedurally barred from asserting his first and fourth grounds

before this Court in this federal habeas proceeding.  Jenner is not entitled to relief under either

the first or fourth ground.

---

[34] Docket No. 23-12, p. 5.

[35] N.Y. CPL § 440.10[2](c) bars review of an issue under § 440.10 when the issue could
have been but was not raised on direct appeal.

[36] *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003).

Ground 5:  Ineffective Assistance of Counsel.

Although Jenner denominates his fifth ground as one of ineffective assistance of counsel,

his argument is that, because N.Y. Criminal Law § 490.20[2] precludes a criminal defendant

from defending himself from the charges brought against him, it is unconstitutional.  Jenner

raised this issue on direct appeal.  In rejecting Jenner's position, the Appellate Division held:

> As relevant here, "[a] person is guilty of making a terroristic threat when with
> intent to ... influence the policy of a unit of government by intimidation or
> coercion, or affect the conduct of a unit of government by murder, assassination or
> kidnapping, he or she threatens to commit or cause to be committed a specified
> offense and thereby causes a reasonable expectation or fear of the imminent
> commission of such offense" (Penal Law § 490.20[1] ).  By not moving in County
> Court to dismiss the indictment on the ground that Penal Law § 490.20 is
> unconstitutional as applied, [Jenner] failed to preserve that argument for our
> review (citation omitted ).  Were we to consider this argument, we would find that
> defendant failed to overcome the strong presumption that this legislative
> enactment is valid (citation omitted).  Penal Law § 490.20 survives the test for
> constitutional vagueness because the statutory language sufficiently apprises
> persons of ordinary intelligence of the type of conduct that is forbidden and
> provides law enforcement officials with clear standards for enforcement (citation
> omitted).  Indeed, [Jenner] acknowledges that his conduct was illegal but simply
> makes the assertion, irrelevant to his constitutional argument, that his conduct was
> not what the Legislature had in mind when it enacted this statute after the
> terroristic attacks of September 11, 2001 and he should not be labeled a terrorist.
> Regardless of the Legislature's intent, the plain words of Penal Law § 490.20
> clearly inform the public and law enforcement officials of the conduct forbidden
> by the statute.[37]

Under controlling Second Circuit law, "[e]ven where the state court has ruled on the

merits of a federal claim, 'in the alternative,' federal habeas review is foreclosed where the state

court has also expressly relied on the petitioner's procedural default."[38]  By failing to traverse the

---

[37] *Jenner*, 835 N.Y.S.2d at 504.

[38] *Murden v. Artuz*, 497 F.3d 178, 191 (2d Cir. 2007) (quoting *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005)).

response, Jenner has neither properly joined the procedural bar issue nor established any basis to

avoid its consequences.  Thus, Jenner is procedurally barred from asserting his fifth ground

before this Court in this federal habeas proceeding and is not entitled to relief under that ground.

> Ground 6:  Recusal of Prosecutor.

Jenner contends that because Jenner and his son had made threats against the life and/or

physical safety of the District Attorney, the District Attorney should have recused himself.

Jenner raised this issue on direct appeal and again in his §§ 440.10/440.30 motion.  The

Appellate Division rejected Jenner's argument, holding:

> Having failed to request that the District Attorney be disqualified or recused from
> prosecuting this case, that contention is unpreserved.  In any event, we see no
> basis upon which such a request would have been granted (citation omitted).

In his §§ 440.10/440.30 motion, Jenner raised another basis:  that the prosecutor's sister

was the Family Court guardian for the child of Jenner's live-in girlfriend prior to the time

Jenner's girlfriend had moved in with Jenner.  The Madison County Court denied Jenner's

§§ 440.10/440.30 motion, holding:

> The court notes that [Jenner] has, in the context of his argument that the
> prosecutor should have been disqualified in this case, put a new twist on his
> original argument and has raised a separate issue that he did not present to the
> Appellate Division.  The new twist is [Jenner's] allegation that the prosecutor had
> been threatened by [Jenner's] son and was thus placed in a situation where he
> could not perform his duties objectively.  The new issue is that the prosecutor's
> sister had served as the Family Court law guardian for [Jenner's] paramour's child
> prior to the paramour moving in with him.  Nowhere in his papers does [Jenner]
> cite a single fact demonstrating that the prosecutor actually acted improperly in
> any respect, attempted to place his personal credibility before the jury, or was
> influenced improperly by any threats made against him.  Moreover, [Jenner] has
> not alleged that he has only recently discovered that the prosecutor's sister had
> been the law guardian for [Jenner's] paramour's child and has acted promptly and
> with due diligence upon such discovery or how, by any stretch of the imagination,
> that fact somehow affected the prosecutor's conduct.  [Jenner's] argument in this
> respect is nothing more than speculation and wishful thinking.  To the extent that

[Jenner] was aware of these matters previously and chose not to present them to the Appellate Division, his motion is denied under CPL § 440.10(2)(c) and if, under the most liberal construction of [Jenner's] submissions, [Jenner] only recently discovered these things, then denial of his motion is warranted due to his failure to demonstrate any fact from which it might be concluded that a verdict more favorable to him would have resulted had this been made known prior to his trial (CPL § 440.10[1][g]).

By failing to traverse the response, Jenner has neither properly joined the procedural bar issue nor established any basis to escape its consequences.  Thus, Jenner is procedurally barred from asserting his sixth ground before this Court in this federal habeas proceeding and is not entitled to relief under that ground.

## C. **Exhaustion**.

This Court may not consider claims that have not been fairly presented to the state courts.[39]  A federal habeas petitioner satisfies the fair presentation aspect of the exhaustion requirement by presenting the essential factual and legal premises of his federal constitutional claim to the appropriate state courts.[40]  In this case, as Respondent correctly asserts, Jenner presented his sixth claim to the state courts solely upon state law grounds.  That is not, however, the end of the matter.  An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used.[41]  Exhaustion does not require that the Petitioner have cited the "book and chapter of the federal constitution."[42]

---

[39] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

[40] *Acosta v. Artuz*, 575 F.3d 177, 185 (2d Cir. 2009) (citing *Reese*, 541 U.S. at 30-34); *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005).

[41] *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005).

[42] *Picard v. Connor*, 404 U.S. 270, 278 (1971).

A petitioner who does not cite "chapter and verse of the Constitution" may nonetheless "fairly present to the state courts the constitutional nature of his claim" through:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.[43]

Jenner's claim does not fit within either of the first two categories. Nor, does it fit neatly in the third. Thus, the exhaustion issue turns on whether Jenner's claim falls within the scope of the fourth—a pattern of facts within the mainstream of constitutional litigation. The gravamen of Jenner's allegation is that, because threats had been made against the District Attorney, he had a direct, personal interest in prosecuting Jenner. The Supreme Court has held that the appointment of an interested prosecutor is a fundamental and pervasive error that undermines confidence in the integrity of the criminal process that requires reversal without regard to the facts and circumstances of the case.[44] In the context of interested prosecutors, the Supreme Court has noted "[a] scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision."[45]  A prosecutor "is not disinterested if he has, or is under the influence of others who have, an axe to

---

[43] *Daye v. Attorney General of the State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982) (en banc).

[44] *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 809-12 (1987) (plurality opinion) (the Court avoided the constitutional issue by using the Court's supervisory powers instead, only Justice Blackmun in his concurring opinion characterized it as a due process violation).

[45] *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 249-50 (1980). (Because it was not within the scope of the questions on which *certiorari* was granted, the Supreme Court did not state with precision what limits there might be on a financial or personal interests of a prosecutor.)

grind against the defendant, as distinguished from the appropriate interest that members of society have in bringing a defendant to justice with respect to the crime with which he is charged."[46]  Although it is somewhat difficult to construe the issue as one of constitutional dimension, Jenner's claim in this case that Jenner and his son had threatened the District Attorney at least colorably falls within this category.  Consequently, to the extent he raises an issue of constitutional dimension, Jenner has properly exhausted the sixth ground in part.

That being said, whether or not Jenner has exhausted his state court remedies is of no actual consequence in this case.  First, as noted in subpart A, above, Jenner is procedurally barred from raising the issue of prosecutorial conflict in this proceeding.  Second, even assuming that the District Attorney had a special interest in securing Jenner's conviction, absent a showing of specific misconduct on the part of the prosecutor, that did not constitute a violation of due process.[47]  Having failed to allege, let alone establish any specific instance of prosecutorial misconduct, Jenner's sixth ground fails on the merits.

**D.  Merits**.

Ground 2:  Physical Restraint (Shackling).

Jenner contends that because he was shackled throughout the trial, and handcuffed when away from counsel table (sidebar conferences and when testifying) and in the view of the jury, his due process rights were violated.  The Appellate Division rejected Jenner's arguments on direct appeal.

---

[46] *Wright v. United States*, 732 F.2d 1048, 1056 (2d Cir. 1984).

[47] *Id.* at 1057-58.

>          [Jenner] was not deprived of a fair trial due to County Court's order that
> he be restrained during the trial.  Defendants should not be physically restrained in
> front of the jury unless a reasonable basis for such restraint is articulated on the
> record (citations omitted).  Here, the court ordered that [Jenner] be restrained by
> leg shackles at all times and wear handcuffs whenever he left the defense table.
> Although not articulated on the record earlier in the proceedings, at argument on
> [Jenner's] posttrial motion, the court stated that it would again explain its reasons
> for the restraint order.  Among the reasons were [Jenner's] criminal history, which
> included an assault conviction, the serious nature of the pending charges, the
> small size of the room and the proximity of numerous other people, several
> witnesses who would be testifying were persons who [Jenner] had threatened, and
> [Jenner] had previously stated that he was dying and had nothing to live for,
> causing the court to believe that he was willing to risk anything, even his own
> personal safety, to further his goals.
>          County Court took measures to reduce any prejudice to [Jenner].  It noted
> that the leg shackles were likely not visible as [Jenner] was seated at the table
> farthest from the jury and he was present at the table before the jury arrived in the
> courtroom.  When [Jenner] testified, he was seated on the witness stand before the
> jury was let in, the entire courtroom was directed not to stand at that time, a
> wooden panel in front of the witness stand covered his hands unless he raised
> them and the court did not notice him ever raising his hands to the point where his
> handcuffs were visible.  Although the jury could see [Jenner's] restraints when he
> approached the bench for conferences and when he attended jury voir dire with
> individual jurors conducted in a small room off the courtroom, the court instructed
> the jury three separate times that the use of restraints was an ordinary security
> measure and could not be used as any indication of guilt (citation omitted).  As the
> court articulated reasons for requiring the restraints and took efforts to avoid any
> prejudice to [Jenner], the order requiring that he wear restraints did not deprive
> [Jenner] of a fair trial (citation omitted).[48]

The Supreme Court has observed that shackling, although an "inherently prejudicial

practice . . . [is] permitted . . . where justified by an essential state interest specific to each

trial."[49]  "The law has long forbidden routine use of visible shackles during the guilt phase; it

---

[48] *Jenner*, 835 N.Y.S.2d at 505-06.

[49] *Holbrook v. Flynn*, 475 U.S. 560, 568-69 (1986); *see Illinois v. Allen*, 397 U.S. 337, 344 (1970) (physical restraints detract from the dignity and decorum of court proceedings, and on that basis alone are disfavored).

permits a State to shackle a criminal defendant only in the presence of a special need."[50]  The

Court then held:

> Thus, where a court, without adequate justification, orders the defendant to wear
> shackles that will be seen by the jury, the defendant need not demonstrate actual
> prejudice to make out a due process violation.  The State must prove beyond a
> reasonable doubt that the [shackling] error complained of did not contribute to the
> verdict obtained.[51]

The Supreme Court has yet to define the parameters of what constitutes "adequate

justification" for the use of restraints.  Jenner has not cited any case in which it was held that the

factors considered by the Madison County Court in this case do not constitute adequate

justification for the use of restraints in this case.  Nor has independent research by this Court

discovered any such case.  Because "adequate justification" is a general standard, a state court

has substantial latitude to reasonably determine that a defendant has not satisfied that standard.[52]

Accordingly, given the total absence of federal authority on the adequacy of the justification for

the use of restraints in this case, this Court cannot say that the decision of the Appellate Division

was "contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States" or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."[53]

Jenner is not entitled to relief on his second ground.

---

[50] *Deck v. Missouri*, 544 U.S. 622, 626 (2005).

[51] *Id*. at 635 (citing *Chapman v. California*, 386 U.S. 18 (1987)).

[52] *See Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule
application was unreasonable requires considering the rule's specificity.  The more general the
rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

[53] 28 U.S.C. § 2254(d); *see Eisemann v. Herbert*, 401 F.3d 102, 110 (2d Cir. 2005);
*McKinney v. Artuz*, 326 F.3d 87, 103 (2d Cir. 2003).

Ground 3:  *Apprendi* Violation.

Jenner argues that he was sentenced as a persistent felony offender based upon facts

found by the judge, not the jury.  Jenner presented this claim to the Madison County Court in his

§ 440.10 motion.  The Madison County Court rejected Jenner's arguments, holding:

> To the extent that [Jenner] now seeks to have his sentence set aside, that motion
> must be denied as well because it has been previously presented to the Appellate
> Division for review.  To the extent that [Jenner] now seeks to add the argument
> that the finding that he was a persistent felony offender and the decision to
> sentence him as such was violative of his rights under *Apprendi v. New Jersey*,
> 530 U.S. 446 (2000), there was simply no "fact" that formed the basis of the
> court's decision that was not admitted by [Jenner].  [Jenner] is arguing that his
> prior felony convictions were "facts", that no proof of such facts was presented to
> his jury and that his jury did not make any findings in that regard.  Even if this
> was a "fact" within the meaning of *Apprendi,* [Jenner] conceded those convictions
> at his sentencing.  The Appellate Division has reviewed [Jenner's] argument
> insofar as the applicable procedures and the exercise of the sentencing court's
> discretion are concerned and concluded that none of his rights have been violated.
> Thus, his motion to set aside his sentence is denied.  CPL § 440.20(2).[54]

As interpreted by the New York Court of Appeals, "defendants are eligible for persistent

felony offender status based *solely* on whether they had two prior felony convictions."[55]

*Apprendi* held that: "*Other than the fact of a prior conviction*, any fact that increases the penalty

for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved

beyond a reasonable doubt."[56]  New York's persistent felony offender status clearly falls within

the *Apprendi* exception of a prior conviction.  Jenner is not entitled to relief under his third

ground.

---

[54] Docket No. 23-12, p. 6.

[55] *People v. Rivera*, 833 N.E.2d 194, 198 (N.Y. 2005) (emphasis in the original).

[56] 530 U.S. at 490 (emphasis added); *see Almendarez-Torres v. United States*, 523 U.S.
224, 243-247 (1998) (recidivism is a sentencing factor, not an element of the crime that must be
submitted to the jury).

Ground 7:  Sentence Harsh/Cruel.

Although Jenner captions his seventh ground as his sentence being harsh and excessive,

in "facts" he merely reiterates his third ground, that he was sentenced as a persistent felony

offender based upon facts found by the judge, not a  jury.[57]  Having addressed that issue in

connection with the third ground, it is not re-addressed here.  As to his harsh and excessive

sentence contention, the Appellate Division rejected Jenner's argument, holding.

> Finally, we will not disturb [Jenner's] sentence.  [Jenner's] criminal history fit
> him within the definition of a persistent felony offender (*see* Penal Law
> § 70.10[1]).  After considering all the evidence presented at a sentencing hearing,
> County Court reasonably determined that [Jenner's] history and character, along
> with the nature and circumstances of his criminal conduct, indicated that lengthy
> incarceration and lifetime supervision would best serve the public interest (*see*
> Penal Law § 70.10[2]).  Having made that determination, the court imposed a
> sentence of 15 years to life imprisonment, the minimum permissible sentence for
> a persistent felony offender (*see* Penal Law § 70.00 [2][a]; [3][a][i]).  This
> sentence was not harsh or excessive under the circumstances.[58]

It appears from the record that the sentence imposed on Jenner was well within the range

specified in state law.  In the Second Circuit, no federal constitutional issue is presented when the

sentence imposed by a state court is within the range allowed by state law.[59]  Having failed to

---

[57] As recited by the trial court, Jenner's criminal history after reaching the age of 16
included the following convictions: 1975 - youthful offender finding that replaced a felony level
assault; 1976 - disorderly conduct; 1978 - criminal possession of stolen property; 1980 - 2
separate convictions of third-degree burglary and one for second-degree criminal trespass; 1981 -
fourth-degree criminal mischief; 1982 - second-degree grand larceny; 1983 - first-degree bail
jumping; 1991 - sexual abuse; 1999 - driving while impaired; and 2001 - second-degree criminal
contempt.  Jenner was convicted of second-degree aggravated harassment in the Syracuse County
Court arising out of the same incidents as formed the basis for the conviction in this case.

[58] *Jenner*, 835 N.Y.S.2d at 506.

[59] *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992).

present this Court with a constitutional issue cognizable in a federal habeas proceeding, Jenner is

not entitled to relief under his seventh ground.

## V.  CONCLUSION AND ORDER

Jenner is not entitled to relief on any ground raised in his petition.  Accordingly,

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.[60]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.[61]

The Clerk of the Court is to enter final judgment accordingly.

Dated:  April 9, 2010.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[60] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).

[61] *See* Fed. R. App. P. 22(b); Second Circuit R. 22.